1
2
3
4
5
6
7
8
9                    UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

11

12 D.L.A. III,                    )   Case No. CV 14-03772-AS
                                  )
13              Plaintiff,        )   **MEMORANDUM OPINION AND**
                                  )
14      v.                        )   **ORDER OF REMAND**
                                  )
15 CAROLYN W. COLVIN, Acting      )
   Commissioner of Social         )
16 Security,                      )
                                  )
17              Defendant.        )
   _____)

18

19      Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED
20 that this matter is remanded for further administrative action
21 consistent with this Opinion.

22

23                          **PROCEEDINGS**

24
        On May 21, 2014, Plaintiff D.L.A., a minor child, proceeding
25 through his mother and appointed guardian ad litem, Calundra C. Thomas,
26 filed a Complaint seeking review of the denial of his application for
27 Supplemental Security Income.  (Docket Entry Nos. 3-4).  The parties
   have consented to proceed before the undersigned United States
28 Magistrate Judge.  (Docket Entry Nos. 10, 12).  On September 26, 2014,

Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 14-15). The parties filed a Joint Position Statement ("Joint Stip.") on June 14, 2015, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 31).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed May 27, 2014 (Docket Entry No. 8).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff was born on December 2, 2000. (<u>See</u> AR 189, 203). On April 1, 2011, Plaintiff filed an application for Supplemental Security Income, alleging a disability since December 1, 2009. (<u>See</u> AR 189-93). On October 1, 2012, the Administrative Law Judge ("ALJ"), Gail Reich, heard testimony from Plaintiff, Plaintiff's mother, and medical expert ("ME") David B. Peterson.[1] (<u>See</u> AR 57-98). At the time of the hearing, Plaintiff was eleven years old and in the sixth grade. (<u>See</u> AR 61, 79). On October 15, 2012, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 12-24).

Applying the three-step sequential evaluation process,[2] the ALJ

---

[1]   Two prior hearings were postponed so that Plaintiff could have additional time to secure an attorney. (<u>See</u> AR 99-112).

[2]   "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

In determining eligibility for Supplemental Security Income based on a childhood disability, the Commissioner applies a three-step evaluation process. <u>See</u> 20 C.F.R. § 416.924(a).

At step one, the Commissioner considers whether the child has engaged in substantial gainful activity. <u>See</u> 20 C.F.R. § 416.924(b). If (continued...)

found, at step one that Plaintiff did not engage in substantial gainful activity since April 1, 2011, the application date. (See AR 15). At step two, the ALJ found Plaintiff's learning disorder "severe." (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled, one of the Listings. (Id.).

The ALJ's finding that Plaintiff's impairment did not functionally equal a listing was based on her determination that Plaintiff did not have a marked limitation in at least two out of six functional domains or an extreme limitation in one domain. Specifically, the ALJ found that Plaintiff had (1) less than a marked limitation in acquiring and using information (Domain No. 1); (2) less than marked limitation in attending and completing tasks (Domain No. 2); (3) a marked limitation in interacting and relating with others (Domain No. 3); (4) no limitation in moving about and manipulating objects (Domain No. 4); (5) no limitation in the ability to care for himself (Domain No. 5); and (6) no limitation in health and physical well-being (Domain No. 6). (See AR 18-23). Accordingly, the ALJ concluded that Plaintiff had not been disabled, as defined in the Social Security Act, since April 1, 2011, the date the application was filed. (See AR 23).

---

[2] (...continued)
not, then at step two, the Commissioner considers whether the impairment or combination of impairments is severe. 20 C.F.R. § 416 .924(c). If severe, step three requires the Commissioner to determine whether the impairment meets, medically equals, or functionally equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P. Appendix 1 (the "Listings"). See 20 C.F.R. § 416.924(d).

An impairment functionally equals a Listing if the child has marked limitations in two out of six functional domains or an extreme limitation in one domain. See 20 C.F.R. § 416.926a(a). The six functional domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and well-being. See 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 7). The request was denied on March 21, 2014. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.   See 42 U.S.C. §§ 405(g), 1383(c).

### PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ failed to properly: (1) determine whether Plaintiff's impairments functionally equaled a listing at step three of the sequential evaluation of childhood disability; and (2) consider the lay witness opinion of Plaintiff's mother. (See Joint Stip. at 2).

### DISCUSSION

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error warrants a remand for further consideration.   Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second claim of error.

**A.    The ALJ Failed To Properly Consider The Record In Determining Whether Plaintiff's Impairment Functionally Equaled A Listing**

Plaintiff contends that the ALJ's finding, at step-three of the three-step evaluation process, that Plaintiff's impairments do not functionally equal a Listing, is not supported by substantial evidence. (See Joint Stip. at 4-11, 16-20).   In particular, Plaintiff challenges the ALJ's finding of "less than marked limitation" in the (second) domain of attending and completing tasks. (Id.).

4

The Social Security Regulations list the information and factors that will be considered in determining whether a child's impairment functionally equals a Listing. See 20 C.F.R. §§ 416.926a, 416.924a, 416.926a. The ALJ is responsible for determining functional equivalence after consideration of all evidence submitted. See 20 C.F.R. § 416.926a(n). In making this determination, the Commissioner considers test scores together with reports and observations of school personnel and others. See 20 C.F.R. §§ 416.924a, 416.926a(e)(4)(ii). The ALJ also considers what activities the child is, or is not, able to perform; how much extra help the child needs in doing these activities; how independent the child is; how the child functions in school; and the effects of treatment, if any. See 20 C.F.R. § 416.926a(b). This information comes from examining and non-examining medical sources as well as "other sources" such as parents, teachers, early intervention team members, case managers, therapists, and other non-medical sources who have regular contact with the child. See 20 C.F.R. § 416.913(c)(3)(d).

In the domain of "attending and completing tasks," the ALJ assesses how well the child can focus and maintain attention, and how well the child can begin, carry through, and finish activities, including the mental pace at which the child performs activities and the ease of changing activities, as well as the child's ability to avoid impulsive thinking and prioritize completing tasks and manage his time. See 20 C.F.R. § 416.926a(h). A school-age child (age 6 to attainment age of 12) without an impairment is expected to have the ability to: (a) focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments; (b) concentrate on details and not make careless mistakes (beyond what would be expected of other children in the same age who do not have impairments) in his work; (c) change activities or routines without distracting [himself] or others and stay on task and in place when appropriate; (d) sustain attention well enough to participate

5

in a group sport, read by himself, and complete family chores; and (e) complete a transition task without extra reminders and accommodation. See 20 C.F.R. § 416.926a(h)(2)(iv).

A "marked" limitation in a domain is found when a child's impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."   See 20 C.F.R. § 416.926a(e)(2). A child's functioning may be seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. Id.  In addition, a "marked limitation" may also be found when there is a valid score that is two standard deviations or more (but less than three) below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and day-to-day functioning in domain-related activities that are consistent with that score.

Here, the ALJ found that Plaintiff had "less than marked limitation in the domain of attending and completing tasks, as testified to by the medical expert and supported by the entire record." (See AR 19-20). Plaintiff contends that the ALJ erred in making this determination because evidence in the record, including several school reports and standardized test results, demonstrate that Plaintiff has a "marked limitation" in this domain. (See Joint Stip at 2-11, 16-20). Although Plaintiff claims that the ALJ failed to consider an April 27, 2011 teacher questionnaire and a June 28, 2011 consultative psychological evaluation in determining whether Plaintiff's impairment functionally equaled a listing, it appears that the ALJ did discuss those records in her decision. (See Joint Stip. at 5-7; see also AR 17). As set forth below, the Court finds that the ALJ failed to consider the March 13, 2012 teacher's report (AR 343-44) and discuss its findings in determining that Plaintiff's ability to meet the requirements in the

domain of attending and completing tasks was less than marked.[3] Therefore the ALJ's step 3 determination is not supported by substantial evidence, let alone the "entire record," as the ALJ contends.

### 1.   School Reports

A January 14, 2011 Individualized Education Program ("IEP")[4] report from Coliseum Elementary School discussed Plaintiff's strengths, needs, impact of disability, as well as annual goals and objectives, in areas of reading, writing, and math. (See AR 219-31). The information was gathered from teacher reports and informal assessments. (See AR 221-22). Among other things, the IEP report noted under "Impact of Disability" that "[Plaintiff's] specific learning disability negatively affects his ability to meet grade level standards. This is manifested in his difficulty with retaining, recalling and reusing information presented to him. This impacts his involvement in the general education curriculum." (Id.).

A February 1, 2012 IEP report from Coliseum Elementary school discussed the same topics above. (See AR 352-65). The information was gathered from teacher reports, informal assessments, and results from the California Standards Test ("CST"). (See AR 354-55). Significantly,

---

[3] Although the ALJ referred to the records contained within Exhibit 8F during the hearing, the ALJ did not mention the March 13, 2012 teacher's report and the Court has no basis to find that the ALJ considered the report in reaching her step 3 determination. (AR 92-94).

[4] An IEP is "a written statement for each child with a disability," which includes, among other things, "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals, including academic and functional goals," "a description of how the child's progress toward meeting the annual goals ... will be measured and when periodic reports on the progress the child is making toward meeting the annual goals," and "a statement of the special education and related services . . . to be provided to the child." See 20 U.S.C. § 1414(d).

the IEP report noted under "Impact of Disability" that Plaintiff's "short attention span makes it difficult for him to retain, recall and reuse information that has been presented to him visually and orally." (Id.).

On March 13, 2012, Plaintiff's fifth grade teacher completed a "Vanderbilt Assessment Scale-TEACHER Informant" form. (See AR 343-44). Ms. Moran opined that Plaintiff "very often": (1) fails to give attention to details or makes careless mistakes in schoolwork; (2) has difficulty sustaining attention to tasks or activities; (3) does not seem to listen when spoken to directly; (4) does not follow through on instructions and fails to finish schoolwork; (5) has difficulty organizing tasks and activities; (6) avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort; (7) is easily distracted by extraneous stimuli; and (8) is forgetful in daily activities. (See AR 343).

A September 27, 2012 IEP amended the February 1, 2012 IEP to include an additional "250 minutes/week of pullout time FROM general education to be spent in the Resource Learning Center for 50 minutes/day" per "parent request." (See AR 261-77).

While an ALJ need not discuss every piece of evidence, an ALJ must explain why significant and probative evidence is rejected. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ must provide an explanation when he rejects "significant and probative evidence") (citation omitted). In the evaluation of child disability cases, the opinions of a child's teachers are highly probative. See 20 C.F.R. §§ 416.924a, 416.926a(e)(4)(ii) (In determining whether a child's impairment functionally equals a listing, the Commissioner considers "test scores together with . . . reports of classroom performance and the observations of school personnel and others."); see also SSR 09-2p(IV)(B) (an IEP is an "important source[] of specific information

about a child's abilities and impairment-related limitations, and provides valuable information about the various kinds of levels of support a child receives" and is "relevant in determining if the "child has marked and severe functional limitations."). As is the case with all "other source" or lay testimony, the teachers' opinions must be considered and the weight given to them explained. <u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006). If their opinions are rejected, the ALJ must give specific "germane" reasons for doing so. <u>Id.</u>

Here, the ALJ's failure to discuss the March 13, 2012 teacher's assessment of Plaintiff's abilities in the various requirements listed in the domain of attending and completing tasks in determining that Plaintiff was "less than marked" in that domain, was error.[5] <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted.).

2.   <u>Standardized Test Scores</u>

Plaintiff contends that the ALJ's failure to discuss his testing scores, specifically the California Standards Test ("CST") administered in Spring 2012, constitutes error. (Joint Stip. 9-10). The test results show that Plaintiff was performing "far below basic level" in "Math," "below basic level" in "Science," and at "basic level" in "English-Language." <u>See</u> AR 281-82. <u>See</u> 20 C.F.R. § 416.926a(e)(ii)

---

[5]   The Court does not find the ALJ's error to be harmless. The opinion was given by a teacher who worked closely with Plaintiff and the teacher's assessment of Plaintiff's abilities in the categories listed in the domain of attending and completing tasks was probative and relevant to the ALJ's determination of whether Plaintiff was marked or less than marked in that domain.

("The medical evidence may include formal testing . . . When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a 'marked' or 'extreme' limitation in a domain."); see also 20 C.F.R. § 416.926a(e)(4)(iii)(B) ("When we do not rely on test scores, we will explain our reasons for doing so in your case record or in our decision.").

However, as the Commissioner points out, the ALJ discussed these test scores with the medical expert during the hearing and the medical expert testified that he could not use the CST test results to determine disability for Social Security which requires a specific test score to determine whether the student level of achievement is at half grade level. ("Well the state test is going to show how he's performing relative to his cohort [phonetic] and . . . based on the Social Security standard, he would need to be scoring at 50 percent or half of his chronological age and achievement. . . If your're a fifth grader, your performing like a second grader. That would be 50 percent.") (AR 92-93). The medical expert testified that there was nothing in the record that showed that Plaintiff was performing at the third grade level. (AR 94). Accordingly, the ALJ did not err in failing to properly consider Plaintiff's CST test scores in determining that Plaintiff was "less than marked" in the domain of attending and completing tasks.

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon

the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess if Plaintiff's impairment was functionally equivalent to a Listing by failing to consider the March 13, 2012 teacher evaluation, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[6]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 25, 2015.

_____
/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[6] As this case is being remanded for the ALJ to consider the March 13, 2012 teacher evaluation, the Court does not reach Plaintiff's second claim, but directs that the lay witness testimony of Plaintiff's mother also be re-assessed on remand.